# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE ALTAMURA; and LISA PEARLY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>L'ORÉAL USA, INC., a Delaware Corporation; and L'ORÉAL USA PRODUCTS, INC., a Delaware Corporation,<br><br>        Defendants. | Civil Action No. 11 Civ. 0799 (SAS) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Dennis S. Ellis
Katherine F. Murray
Nicholas Begakis
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Cynthia Curtin
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: 212-318-6000
Facsimile: 212-752-2515

Attorneys for Defendants
L'Oréal USA, Inc. and L'Oréal USA Products, Inc.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   RELEVANT FACTS ................................................................................................. 4

      A.    Allegations of the FAC ................................................................................... 4

      B.    Notable Omissions from the FAC .................................................................. 5

III.  STANDARD FOR A RULE 12(b)(6) MOTION ..................................................... 6

IV.   PLAINTIFFS LACK STANDING UNDER ARTICLE III ...................................... 6

V.    PLAINTIFFS HAVE NOT PLED THEIR CLAIMS WITH THE REQUISITE
      SPECIFICITY ........................................................................................................... 9

VI.   PLAINTIFFS CANNOT MAINTAIN CLAIMS FOR VIOLATION OF
      NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350 ..................... 10

      A.    Plaintiffs Have Not Alleged a Cognizable Injury ......................................... 11

      B.    Plaintiffs Have Not Alleged Materially Deceptive Conduct by L'Oréal ............. 13

      C.    Plaintiffs Have Not Pled Reliance to Support a Claim Under New York's
            False Advertising Law ................................................................................. 14

VII.  PLAINTIFFS' WARRANTY CLAIMS HAVE NO PLACE IN THIS LAWSUIT ....... 14

VIII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR
      COMPETITION LAW ............................................................................................. 16

      A.    Plaintiffs Cannot Allege Unfair Conduct Under the UCL ................................. 17

      B.    Plaintiffs Cannot Allege Any Unlawful Conduct to Support a UCL Claim ........ 19

      C.    Plaintiffs Cannot State a Claim Under the Fraudulent Prong of the UCL ........... 21

IX.   PLAINTIFFS CANNOT PLEAD A VIOLATION OF CALIFORNIA'S FALSE
      ADVERTISING LAW .............................................................................................. 23

X.    PLAINTIFFS CANNOT STATE A CLAIM UNDER THE CONSUMER LEGAL
      REMEDIES ACT ...................................................................................................... 24

XI.   CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Online, Inc. v. Super. Ct. (Mendoza)*,
    90 Cal. App. 4th 1 (2001) ..........................................................................24

*Am. Suzuki Motor Corp. v. Super. Ct. (Carney)*,
    37 Cal. App. 4th 1291 (1995) ..............................................................15, 16

*Andrade v. Pangborn Corp.*,
    No. 02-3771, 2004 WL 2480708 (N.D. Cal. Oct. 22, 2004) ...................16

*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*,
    421 F.3d 981 (9th Cir. 2005) ....................................................................23

*Ashcroft v. Iqbal*,
    -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................6

*Avritt v. Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) ....................................................................1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)........................................................6

*Brockey v. Moore*,
    107 Cal. App. 4th 86 (2003) ....................................................................23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ........................................................................17, 18

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
    35 Cal. 3d 197 (1983) ....................................................................3,10, 23

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) ..............................................................................17

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) ..............................................................21, 24

*Denny v. Ford Motor Co.*,
    639 N.Y.S.2d 250 (N.Y. 1995) ................................................................15

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004)..............................6

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Farmers Ins. Exch. v. Super. Ct. (The People),*
  2 Cal. 4th 377 (1992) ...................................................................................19

*Feinstein v. Firestone Tire & Rubber Co.,*
  535 F. Supp. 595 (S.D.N.Y. 1982) ...............................................................16

*Freeman v. Time, Inc.,*
  68 F.3d 285 (9th Cir. 1995) .......................................................................2, 22

*Freeman v. Wal-Mart Stores, Inc.,*
  111 Cal. App. 4th 660 (2003) ......................................................................24

*Goshen v. Mutual Life Ins. Co. of New York,*
  746 N.Y.S.2d 858 (N.Y. 2002) .....................................................................10

*Hamzik v. Zale Corp./Delaware,*
  No. 3:06-cv-1300, 2007 WL 1174863 (N.D.N.Y. April 19, 2007) .............13

*Hooper v. HM Mane Solutions, LLC,*
  819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006) .....................................................11

*In re Am. Express Co. S'holder Litig.,*
  39 F.3d 395 (2d Cir. 1994) .............................................................................4

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ..................................................................................21

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2009) .........................................................................8

*Indep. Cellular Tel., Inc. v. Daniels & Assocs.,*
  863 F. Supp. 1109 (N.D. Cal. 1994) ............................................................19

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ........................................................................9

*Keilholtz v. Lennox Hearth Prods. Inc.,*
  268 F.R.D. 330 (N.D. Cal. 2010) ...................................................................8

*Kirch v. Liberty Media Corp.,*
  449 F.3d 388 (2d Cir. 2006) .............................................................6, 14, 19, 22

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ...........................................................................17

*Krieger v. Nick Alexander Imports, Inc.,*
    234 Cal. App. 3d 205 (1991) ...................................................................15

*Lavie v. Procter & Gamble Co.,*
    105 Cal. App. 4th 496 (2003) ...........................................................18, 23

*Liberty Mut. Ins. Co. v. WAWA Tours, Inc.,*
    No. CV-07-0880, 2007 WL 2743500 (E.D.N.Y. Sept. 18, 2007) .............9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).......................7

*Mass. Mut. Life Ins. Co. v. Super. Ct. (Karges),*
    97 Cal. App. 4th 1282 (2002) ...........................................................24, 25

*Matsumura v. Benihana Nat'l Corp.,*
    542 F. Supp. 2d 245 (S.D.N.Y. 2008).....................................................9

*Maurizio v. Goldsmith,*
    230 F.3d 518 (2d Cir. 2000).....................................................................14

*Nike, Inc. v. Kasky,*
    539 U.S. 654 (2003)...................................................................................7

*Oestreicher v. Alienware Corp.,*
    322 F. App'x 489 (9th Cir. 2009)...........................................................25

*Olson v. Cohen,*
    106 Cal. App. 4th 1209 (2003) ...............................................................18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    623 N.Y.S.2d 529 (N.Y. 1995) ....................................................2, 10, 13

*PDK Labs, Inc. v. Friedlander,*
    103 F.3d 1105 (2d Cir. 1997).....................................................................21

*Pelman v. McDonald's Corp.,*
    396 F.3d 508 (2d Cir. 2005)..................................................................1, 14

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*People v. Casa Blanca Convalescent Homes, Inc.,*
   159 Cal. App. 3d 509 (1984) ......................................................................17

*People v. Dollar Rent-A-Car Sys., Inc.,*
   211 Cal. App. 3d 119 (1989) ......................................................................17

*People v. McKale,*
   25 Cal. 3d 626 (1979) ................................................................................19

*People v. Toomey,*
   157 Cal. App. 3d 1 (1984) ..........................................................................17

*Prata v. Super. Ct. (Bank One, NA),*
   91 Cal. App. 4th 1128 (2001) ....................................................................16

*Rodriguez v. It's Just Lunch, Int'l,*
   No. 07 Civ. 9227 (SHS), 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ...................12

*Rombach v. Chang,*
   355 F.3d 164 (2d Cir. 2004)..........................................................................9

*Segal v. Gordon,*
   467 F.2d 602 (2d Cir.1972)...........................................................................8

*Shvarts v. Budget Group, Inc.,*
   81 Cal. App. 4th 1153 (2000) ...............................................................18, 24

*Small v. Lorillard Tobacco Co.,*
   698 N.Y.S.2d 615 (N.Y. 1999) ..........................................................2, 11, 12

*Smith v. State Farm Mut. Auto. Ins. Co.,*
   93 Cal. App. 4th 700 (2001) ......................................................................17

*Sokoloff v. Town Sports Int'l, Inc.,*
   778 N.Y.S.2d 9 (N.Y. App. Div. 2004) ...............................................11, 12

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
   17 Cal. 4th 553 (1998) ..............................................................................20

*Stutman v. Chem. Bank,*
   690 N.Y.S.2d 8 (N.Y. App. Div. 1999) ..............................................2, 13

LEGAL_US_W # 67281903.7

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Sugawara v. Pepsico, Inc.*,
    No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115 (E.D. Cal. May 20, 2009) ....................15

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
    922 F. Supp. 299 (C.D. Cal. 1996) ................................................................3, 21

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
    933 F. Supp. 918 (C.D. Cal. 1996) ..........................................................................21

*Swanson v. St. John's Regional Med. Ctr.*,
    97 Cal. App. 4th 245 (2002) ..................................................................................18

*Viscusi v. Proctor & Gamble*,
    No. 05-CV-01528 (DLI), 2007 WL 2071546 (E.D.N.Y. July 16, 2007) ............................2, 15

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) ..............................................................................13

*Wilens v. TD Waterhouse Group, Inc.*,
    120 Cal. App. 4th 746 (2003) .............................................................................3, 25

*Woods v. Maytag Co.*,
    No. 10-CV-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .....................................13, 14

**STATUTES**

21 U.S.C. § 337(a) ..............................................................................................21

Cal. Civ. Code § 1770(a) ........................................................................................24

Cal. Civ. Code § 1780(a) .....................................................................................3, 25

Cal. Bus. & Prof. Code § 17200 ....................................................................... passim

Cal. Bus. & Prof. Code § 17500 .................................................................................3

N.Y. Gen. Bus. Law § 349 ............................................................................... passim

N.Y. Gen. Bus. Law § 350 ............................................................................... passim

**RULES**

Fed. R. Civ. P. 9(b) ..............................................................................................9

LEGAL_US_W # 67281903.7

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Fed. R. Civ. P. 12(b)(6)..................................................................................................4, 6

Fed. R. Civ. P. 23..............................................................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Article III § 2.................................................................................... passim

LEGAL_US_W # 67281903.7

## I.   **INTRODUCTION**

Plaintiffs Catherine Altamura and Lisa Pearly's ("Plaintiffs") First Amended Complaint

("FAC"), their second attempt to state a claim, is irreparably flawed because neither Plaintiffs,

nor the class they seek to represent, suffered any injury-in-fact and all of the claims in the FAC

are therefore barred for lack of standing pursuant to Article III Section 2 of the United States

Constitution ("Article III").  Plaintiffs allege that the label of a hair care product manufactured

by defendants L'Oréal USA, Inc. and L'Oréal USA Products, Inc. (collectively "L'Oréal") failed

to warn consumers that two chemicals in the product could be flammable when used with heated

hair styling appliances.  Notably, neither Plaintiffs, nor the class they seek to represent, allege

that they suffered any physical injury as a result of this alleged defect.  Plaintiffs rely on various

consumer protection statutes in an effort to manufacture a claim where none exists; however,

none of these statutes, or the case law interpreting them, alleviates the constitutionally mandated

standing requirement. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1033 (8th Cir. 2010)

(noting that California case law interpreting California's Unfair Competition Law, Cal. Bus. &

Prof. Code § 17200, et seq. ("UCL") is "diverge[nt] from federal jurisprudential principles"

regarding standing but cannot obviate the standing requirement for cases pending in federal

courts).

In addition to the lack of standing, which is fatal to their claims, Plaintiffs' FAC fails to

state any claims upon which relief can be granted.  Plaintiffs cannot maintain a claim under

New York General Business Law Sections 349 ("Section 349") and 350 ("Section 350") for the

same reasons that they presumably did not assert a products liability claim:  Plaintiffs have not

suffered an injury. *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  A

plaintiff asserting a Section 349 claim must plead an injury separate and distinct from any

alleged deception. *See Small v. Lorillard Tobacco Co.*, 698 N.Y.S.2d 615 (N.Y. 1999) (Plaintiffs may not assert "deception as both act and injury"). Plaintiffs fail to allege that they suffered any harm from using the product at issue, or that they even viewed any informational and/or promotional materials related to the product prior to their purchase. Plaintiffs also have not alleged that L'Oréal engaged in "'materially deceptive conduct' on which they relied to their detriment." *Stutman v. Chem. Bank*, 690 N.Y.S.2d 8, 10 (1999). In other words, Plaintiffs have not shown that any conduct on the part of L'Oréal is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (N.Y. 1995).

The defects in Plaintiffs' Section 349 and Section 350 claims likewise preclude them from maintaining implied warranty claims in this case. Having excluded from the putative class any person who may have been harmed by using the product, Plaintiffs cannot allege that the product at issue did not perform as expected or that the product is defective. *See Viscusi v. Proctor & Gamble*, No. 05-CV-01528 (DLI), 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007) (citing *Denny v. Ford Motor Co.*, 639 N.Y.S.2d 250 (N.Y. 1995)) (A warranty of merchantability "does not mean that the product will fulfill a 'buyer's every expectation'" but rather simply "provides for a minimum level of quality.")

Plaintiffs' claims brought under California's unfair competition and false advertising laws are also defective. Plaintiffs have not alleged that any conduct by L'Oréal constitutes an unfair, unlawful or fraudulent business practice, as required by California's UCL. In particular, Plaintiffs have not alleged any facts showing that L'Oréal's conduct is unfair or unlawful, as they cannot demonstrate that the public is likely to be deceived by the alleged advertisements, or that they relied on such advertisements when purchasing the product. *Freeman v. Time, Inc.*, 68 F.3d

285 (9th Cir. 1995) (upholding dismissal of claims under California's consumer protection statutes and finding that advertisements were not likely to deceive as a matter of law).  Plaintiffs also cannot proceed under the "unlawful" prong of the UCL, as Plaintiffs premise their claim on purported violations of the Food and Drug Cosmetic Act ("FDCA"), which cannot form the basis of a UCL claim because the FDCA does not provide for a private right of action.  *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 305, 306 (C.D. Cal. 1996).

Like their UCL claim, Plaintiffs' claim for violation of California's false advertising law, California Business and Professions Code Section 17500 (the "FAL"), also fails because Plaintiffs have not alleged that L'Oréal made "untrue or misleading" statements while selling goods or services.  *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) (quoting *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876, (1976)).

Plaintiffs' claim based on the California's Consumer Legal Remedies Act ("CLRA") cannot advance beyond the pleading stage, again, because Plaintiffs have not shown that L'Oréal's alleged conduct caused them any actual harm.  Cal. Civ. Code § 1780(a); *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof").  Even if Plaintiffs' fanciful theory of damage without injury were to be accepted by the Court, Plaintiffs' FAC nonetheless fails to state a claim under the CLRA as it does not point to any representation made by L'Oréal that is prohibited by the CLRA.

Stripped of camouflage, Plaintiffs' FAC proposes a new subset of strict product liability law for persons who have suffered no physical injury or property damage as a result of an alleged failure to warn, whose only claimed "damage" is the purchase of the product itself. Article III and the consumer protection statutes identified by Plaintiffs prohibit such a claim from

being brought in this Court, as too does public policy and plain common sense. For if Plaintiffs'

theory of the law is to stand, the mere filing of a product liability case for failure to warn would

give rise to a consumer class action for all purchasers of the alleged defective product, giving

them rights not even enjoyed by the product liability plaintiff. Indeed, the plaintiffs in the

subsequent class action would presumably be able to establish liability without proving a causal

connection between a defect in the product and a physical injury or property damage suffered by

them. Further, they would be able to adjudicate the claims of perhaps millions of plaintiffs in the

summary fashion allowed by Rule 23. The class plaintiffs' path would be so clear that it would

almost certainly lead to the anomalous result that a manufacturer is found liable to the class

while defeating the product liability plaintiff's claim and proving no warning defect existed with

the product. As that is precisely the situation created by this case, Plaintiffs' FAC should be

dismissed, without leave to amend, pursuant to Rule 12(b)(6). *See In re Am. Express Co.*

*S'holder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (affirming district court's dismissal without

leave to amend where appellants had not indicated how they could transform the facts pleaded

into a sufficient allegation).

## II.   **RELEVANT FACTS**

### A.   **Allegations of the FAC**

Plaintiffs have brought a class action lawsuit seeking to certify multi-state, New York and

California classes based on L'Oréal's purported failure to warn consumers that two ingredients

contained in Garnier Fructis Sleek & Shine Anti-Frizz Serum (the "Serum") could be flammable

when used in connection with heated hair styling products. (FAC, ¶ 2.) Plaintiffs premise this

case on allegations advanced in a product liability action currently pending in Arkansas state

court, wherein a minor is alleged to have suffered injury when she used a hot straightening comb

after applying the Serum to hair.  (FAC, ¶ 91.)  However, Plaintiffs specifically exclude from their class definitions in this case "any persons who have sustained physical injury as a result of the defects at issue in this litigation."  (FAC, ¶ 46.)  Plaintiffs allege that L'Oréal knew or should have known that two substances in the Serum are highly flammable when used with heated styling appliances, and that they would not have purchased the Serum if L'Oréal had disclosed this fact.  (FAC, ¶¶ 27, 35.)

Plaintiffs take issue with several advertisements for the Serum, ranging from two different types of product packaging ("old packaging" that contained a flammability warning and packaging without any warning (FAC, ¶¶ 16, 140)), to generalized statements on Garnier's website discussing the claim and development process for its products.  (FAC, ¶ 17.)  In particular, Plaintiffs allege that the old product packaging, which directed consumers to "avoid fire, flame, smoking and heat (except for styling appliances) during application and until hair is completely dry," is misleading because it implies that the Serum is safe to use with styling appliances.  (FAC, ¶ 16(b).)

Plaintiffs' only alleged injury is monetary losses, based either on the purchase price of the Serum, or on the difference of the "inflated price" and the price L'Oréal should have charged for a product containing adequate warnings.  (FAC, ¶ 31.)

**B.     Notable Omissions from the FAC**

Plaintiffs' FAC reveals more by what it omits than by what it contains.  While Plaintiffs point to several different written statements made by L'Oréal regarding the Serum (FAC, ¶¶ 16-17), they do not attach any of these statements to the FAC.  Nor, do Plaintiffs attach a single advertisement to the FAC, despite pleading several causes of action based on false advertising. Plaintiffs also do not allege that they actually viewed or considered any of the alleged statements

and/or advertisements regarding the product prior to purchasing the Serum.  Likewise, Plaintiffs do not allege that the Serum caused them any physical harm.  While Plaintiffs allege that they paid an "inflated price" for the Serum, (FAC, ¶ 31), Plaintiffs do not allege any facts to support their conclusion that L'Oréal was able to charge an inflated price for the Serum, or that the cost of the Serum was affected in any way by the alleged misrepresentations or omissions.

## III.   STANDARD FOR A RULE 12(b)(6) MOTION

Rule 12(b)(6) provides a mechanism for a party to dismiss a lawsuit where the complaint lacks either a cognizable legal theory or sufficient facts to support a cognizable legal theory.  The complaint must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (internal quotations omitted).  As recently ordered by the Supreme Court, a complaint must state a claim for relief that is "plausible on its face," and when the pleading alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility[,]'" and is therefore insufficient. *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 557).  While a court must construe all allegations in the complaint in the light most favorable to the Plaintiff, it is not required to accept as true conclusory legal allegations cast in the form of factual allegations, unwarranted deductions of fact, or unreasonable inferences. *Ashcroft*, 129 S. Ct. at 1949; *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss").

## IV.   PLAINTIFFS LACK STANDING UNDER ARTICLE III

As a threshold matter, all of Plaintiffs' claims are barred as a result of their lack of Article III standing.  "In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301,

2308, 159 L. Ed. 2d 98 (2004). The Constitution limits federal judicial power to "cases" and "controversies." U.S. Const., Art. III § 2. In order to satisfy the case or controversy requirement a plaintiff must plead "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 2135-36, 119 L. Ed. 2d 351 (1992) (citations omitted) (internal quotation marks omitted). Claims brought under state consumer protection statutes such as California's UCL and FAL that fail to allege any "distinct and palpable" injury should be "dismissed at the outset" for lack of standing to pursue claims in federal court. *See Nike, Inc. v. Kasky*, 539 U.S. 654, 661 (2003) (Stevens, J. concurring).

Justice Stevens' concurring opinion in *Nike* is instructive. The plaintiff in *Nike* brought claims under California's UCL and FAL alleging that defendant Nike made false statements and material omissions of fact regarding working conditions at its factories in an effort to increase its sales. *Id.* at 656. The Court dismissed the plaintiff's writ of certiorari as improvidently granted. *Id.* at 654. In his concurring opinion, Justice Stevens noted that the plaintiff lacked standing to pursue a claim in federal court because the alleged omissions and false statements did not result in any injury-in-fact to the plaintiff. *Id.* at 661.

Plaintiffs here have failed to allege any concrete injury; rather, they attempt to rely upon injuries suffered by the plaintiff in a products liability action pending in Arkansas. (FAC, ¶ 91.) Plaintiffs do not allege that they suffered any physical harm, nor do they allege any economic injury beyond the naked assertion that they paid an "inflated price" for the Serum. (FAC, ¶ 31.) Plaintiffs may contend that their purchase of the product constitutes an injury, but the FAC fails to include any allegations regarding the product that support such a theory. Plaintiffs do not allege that the Serum failed to perform as advertised or that they were dissatisfied with the

product. Plaintiffs' contention that they overpaid for the product based on a failure to disclose a danger that never manifested is insufficient to satisfy the Article III standing requirement.

Plaintiffs may attempt to argue speciously that they have satisfied Article III's standing requirement by relying on cases such as *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010). *Keilholtz*, and cases like it, are distinguishable on their facts, however. In *Keilholtz*, the plaintiffs purchased allegedly defective and dangerous fireplaces. *Id.* at 333-34. The named plaintiffs contended that although they did not suffer any physical injuries they suffered an "economic injury" because they purchased the fireplaces and were unable or unwilling to use them as a result of the alleged defects. *Id.* at 335-336. Unremarkably, the district court held that plaintiffs had pled facts sufficient to create Article III standing by stating that their homes had been devalued by the continued existence of the defective fireplaces. *Id.* at 336.

*Keilholtz* and any similar authority lends no support to Plaintiffs here. Plaintiffs and the class they seek to represent (which does not include any members who suffered physical harm) have purchased and used the product without incident. Thus, this case is more akin to *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009), a case in which the court declined to certify a class of plaintiffs who, like Plaintiffs here, alleged that they paid a premium for a product which they would not have paid had they known the product was dangerous. The failure (inability) of Plaintiffs to allege a distinct injury-in-fact requires the dismissal of all of Plaintiffs' claims for a lack of Article III standing. There does not appear to be any "applicable" authority to the contrary. There does not appear to be any "applicable" authority to the contrary.

## V.    PLAINTIFFS HAVE NOT PLED THEIR CLAIMS WITH THE REQUISITE SPECIFICITY

In addition to the lack of standing, Plaintiffs fail to plead their allegations with the requisite specificity.  Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).  As noted in *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972), "[i]t is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically" (citing 1A W. Barron & A. Holtzoff, Federal Practice and Procedure § 302, at 215-16 (Wright rev. 1960)).

The Rule 9(b) requirement is a federally imposed rule, and applies to any state-law claim that sounds in fraud.  *See, e.g.*, *Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, No. CV-07-0880, 2007 WL 2743500, at *6 n.10 (E.D.N.Y. Sept. 18, 2007); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to UCL and CLRA claims where the underlying basis for those claims is an alleged course of fraudulent conduct); *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) (holding that Rule 9(b) applies to Plaintiffs' breach of fiduciary duty claims because they were predicated on defendant's "false omissions and representations to deceive and to induce plaintiffs . . .").  As the Second Circuit explained in *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), "[b]y its terms, Rule 9(b) applies to 'all averments of fraud.'  This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."

Plaintiffs' allegations fall well short of what is needed to plead their "serious charges" with the specificity required by Rule 9(b).  Plaintiffs' FAC contains nothing more than some general allegations related to the Serum that come from its purported packaging and Garnier's

website, but fails to allege that Plaintiffs even saw these statements, let alone relied upon them. Furthermore, while Plaintiffs claim that other "similar products" contained adequate warnings and that L'Oréal "inaccurately represent[s]" that the Serum is a safer product than that of its competitors, Plaintiffs neither identify those other "similar products" nor identify the precise statements made by L'Oréal regarding the safety of the Serum. (FAC, ¶ 39.) Finally, while Plaintiffs take issue with L'Oréal's advertising related to the product, not a single one of those advertisements is attached to the FAC, recited verbatim in the FAC, or even paraphrased. Thus, L'Oréal and the Court are left to speculate as to what precise statements or omissions by L'Oréal in that advertising Plaintiffs allege are actionable. *Cf. Comm. on Children's Tel., Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 218 (1983) (holding that in order to properly plead a claim based on misleading advertising, Plaintiff is required "to set out or attach a representative selection of advertisements, to state the misrepresentations made by those advertisements, and to indicate the language or images upon which any implied misrepresentations are based").

## VI.   PLAINTIFFS CANNOT MAINTAIN CLAIMS FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350

Section 349 declares that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York are unlawful. To maintain a prima facie case under Section 349, Plaintiffs must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the Plaintiffs have been injured as a result. *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 532. The standard for recovery under Section 350, while specific to false advertising, is otherwise identical to Section 349. *Goshen v. Mutual Life Ins. Co. of New York*, 746 N.Y.S.2d 858, 863, n.1 (N.Y. 2002).

In 2006, a New York Supreme Court considered a case virtually identical to the lawsuit advanced by Plaintiffs here, holding that there was no violation of either Section 349 or Section 350.  In *Hooper v. HM Mane Solutions, LLC*, 819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006), plaintiff sought to certify as a class action a case brought against the manufacturer of a hair product, which plaintiff alleged had been proven to cause damage to consumers' hair and scalp. Just like the Plaintiffs in this case, plaintiff in *Hooper* alleged that the defendant manufacturer's failure to warn of this known danger violated, *inter alia*, Section 349 and Section 350. Dismissing Plaintiffs' claims and holding that no class action could be certified, the court ruled that "the plaintiff has failed to persuade the court that a person who has not been injured by his or her use of the . . . . product has any viable cause of action against the defendant merely because the product may have damaged the hair or scalp of other users and the manufacturer or seller failed to disclose this fact or provide a warning." *Id.* at 848.

As shown below, although the foregoing ruling in *Hooper* is obvious and likely what led the court in *Hooper* to refrain from a prolix discussion of its rationale, a careful application of Section 349 and Section 350 to allegations such as those set forth in this case, removes any doubt as to whether Plaintiffs can state a claim under the aforementioned New York consumer protection statutes.  Plaintiffs cannot.

**A.      Plaintiffs Have Not Alleged a Cognizable Injury**

To state a claim under Section 349 and Section 350, Plaintiffs must plead an injury separate and distinct from the alleged deception.  *Small*, 698 N.Y.S.2d at 621 (Plaintiffs may not assert "deception as both act and injury"); *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 10 (N.Y. App. Div. 2004).  Plaintiffs must plead facts showing actual injury, not merely the alleged deceptive act.  *Small*, 698 N.Y.S.2d at 620-21 (mere allegation of deception is insufficient to

establish actual injury). In *Small*, the New York Court of Appeals upheld dismissal for failure to

plead actual injury, where plaintiffs alleged that defendants employed deceptive practices to sell

cigarettes, and sought recoupment of the purchase price. The Court held:

> [Plaintiffs] posit that consumers who buy a product that they would not have
> purchased, absent a manufacturer's deceptive commercial practices, have suffered
> an injury under General Business Law § 349. We disagree.
>
> Plaintiffs' definition of injury is legally flawed. Their theory contains no
> manifestation of either pecuniary or "actual" harm; plaintiffs do not allege that the
> cost of cigarettes was affected by the alleged misrepresentation, nor do they seek
> recovery for injury to their health as a result of their ensuing addiction. Indeed,
> they chose expressly to confine the relief sought solely to monetary recoupment
> of the purchase price of the cigarettes. Plaintiffs' cause of action . . . thus sets
> forth deception as both act and injury.

*Id.* (citations omitted). Similarly, in *Sokoloff*, 778 N.Y.S.2d at 10, the court upheld dismissal of a

case where plaintiffs sued her health club for deception, because she did "not claim any kind of

monetary loss other than payment of her membership fees, d[id] not claim that defendant failed

to deliver the services called for in the contract, never sought to cancel the contract, remain[ed] a

member of defendant's health club and continue[d] to pay defendant's monthly membership fees

without objection."

    Likewise here, Plaintiffs' FAC is bereft of any allegation that the Serum failed to perform

as advertised, or that the omitted flammability warning enabled L'Oréal to charge a premium for

the Serum. Allegations that Plaintiffs would not have purchased the Serum had it contained a

flammability warning are insufficient to satisfy the injury requirement of Section 349.

*Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227 (SHS), 2010 WL 685009, at *9 (S.D.N.Y.

Feb. 23, 2010) ("'[C]onsumers who buy a product that they would not have purchased, absent a

manufacturer's deceptive commercial practices,' have not suffered an injury cognizable under

NYGBL § 349.") (citing *Small*, 698 N.Y.S.2d at 620-21). Lacking an allegation of actual injury,

Plaintiffs cannot proceed with their Section 349 claim.

### B.     Plaintiffs Have Not Alleged Materially Deceptive Conduct by L'Oréal

Plaintiffs also cannot satisfy the materiality requirement of Section 349. "The burden is on plaintiffs to show 'materially deceptive conduct' on which they relied to their detriment." *Stutman v. Chem. Bank*, 690 N.Y.S.2d 8, 10 (N.Y. App. Div. 1999). The test of materiality is whether the allegedly deceptive practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances" *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 532. Courts can determine whether a representation is misleading at the pleading stage. *Hamzik v. Zale Corp./Delaware*, No. 3:06-cv-1300, 2007 WL 1174863, at *5 (N.D.N.Y. April 19, 2007) (dismissing false advertising claim on grounds that the complaint failed to identify any statements that were literally false or likely to deceive or confuse customers.)

Plaintiffs' failure to identify the advertisements they purportedly reviewed prior to purchasing the Serum precludes them from satisfying the materiality requirement, as general references to advertisements and statements are not sufficient to allege a deceptive act or practice. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (pleading that "advertisements aimed at the general public" was not sufficient to adequately allege "deceptive acts and practices" under Section 349); *Woods v. Maytag Co.*, No. 10-CV-0559, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) ("Courts routinely dismiss claims under GBL § 349 where the allegations are insufficiently specific to establish a deceptive practice"). To the extent Plaintiffs intend to rely on the old product packaging that contained a flammability warning (FAC, ¶ 16(b)), Plaintiffs have not alleged facts showing that the warning was likely to deceive a consumer. Plaintiffs also have not shown that the product packaging which contains no flammability warning is deceptive, *i.e.*, that a reasonable consumer would draw any inference regarding the flammable nature of the Serum based on the lack of any reference to flammability.

Plaintiffs' allegations are nothing more than conclusions "masquerading as factual conclusions [which] will not suffice to [defeat] a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (second alteration in original).[1]

### C.  **Plaintiffs Have Not Pled Reliance to Support a Claim Under New York's False Advertising Law**

Plaintiffs' failure to satisfy the pleading requirements for a Section 349 claim also bars their Section 350 claim. *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (applying "same interpretation" to Section 350 as to Section 349).  Additionally, unlike a claim brought under Section 349, a claim brought pursuant to Section 350 requires proof of actual reliance. *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Plaintiffs have not alleged that they relied on any advertisement prior to purchasing the Serum.  Instead, Plaintiffs reference different statements made on product packaging for the Serum, as well as statements made on Garnier's website regarding its general product and claim development processes.  (FAC, ¶¶ 16, 17, 26.)  These allegations do not provide any facts showing that Plaintiffs actually relied on a representation or omission made by L'Oréal. Accordingly, Plaintiffs cannot proceed with a claim under Section 350.

## VII.  **PLAINTIFFS' WARRANTY CLAIMS HAVE NO PLACE IN THIS LAWSUIT**

Plaintiffs assert implied warranty claims under the UCC and California's Song Beverly Consumer Warranty Act.[2]  Plaintiffs cannot maintain an implied warranty claim of any kind in

---

[1] Plaintiffs' allegations that Defendants "knew or should have known that" the Serum could be flammable do not move Plaintiffs any closer to satisfying the materiality requirement of Section 349.  FAC, ¶ 27.  Plaintiffs allege no facts showing that L'Oréal omitted warnings on the product to induce purchases. *See, e.g.*, *Woods v. Maytag Co.*, 2010 WL 4314313, at *16 (plaintiff's vague allegation that defendants "knew" of the alleged defect was insufficient to support a Section 349 claim; plaintiff "has simply not provided enough factual information to plausibly suggest that the Maytag Defendants had knowledge of the defect or made misrepresentations to induce purchase of the ovens").

[2] Plaintiffs allege violations of UCC Section 2-314 (claim three), which provides that a product must be fit for its ordinary purpose; UCC § 2-315 (claim four), which provides an implied

this case, as they have not alleged that the Serum did not perform as it was supposed to.  Under the UCC, if a seller is a merchant, there is an implied contract that the goods will be of merchantable quality.  *See Denny v. Ford Motor Co.*, 639 N.Y.S.2d 250 (1995) (citing UCC § 2-314(2)(c)).  A warranty of merchantability, however, "does not mean that the product will fulfill a 'buyer's every expectation'" but rather simply "provides for a minimum level of quality."  *Viscusi v. Proctor & Gamble*, No. 05-CV-01528 (DLI), 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007) (citing *Denny*, 639 N.Y.S.2d at 256).  *See also Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *5 (E.D. Cal. May 21, 2009) (same).  Even crediting each of the allegations of the FAC as true, Plaintiffs cannot establish that the Serum failed to constitute a merchantable product.

As set forth in the FAC, Plaintiffs exclude from the putative classes all persons "who have sustained physical injury as a result of the defects at issue in this litigation."  (FAC, ¶ 46.)  Thus, to the extent an individual could have standing to assert an implied warranty claim based on the facts alleged in the FAC, those persons are not part of this lawsuit.[3]  As for those persons who fall under the alleged class definitions, Plaintiffs do not allege that any such persons actually used the Serum, or that upon use, the Serum failed to perform as advertised, or that it was not fit for its ordinary purpose.  Consequently, none of the putative class members has standing to

---

warranty of fitness for a particular purpose where, at the time of contracting, the seller knows or has reason to know that the buyer is relying on the seller's skill or judgment to select or to furnish suitable goods for certain purpose (*Am. Suzuki Motor Corp. v. Super. Ct. (Carney)*, 37 Cal. App. 4th 1291, 1295, n.2 (1995)); and violations of the Song-Beverly Consumer Warranty Act (claims five and six) which supplement UCC by broadening a consumer's remedies to include costs, attorney's fees, and civil penalties.  *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 213 (1991).

[3]  While Plaintiffs reference a lawsuit currently pending in Arkansas in which a consumer alleges she was burned after using the Serum (FAC, ¶ 91), Plaintiffs' decision to exclude from this lawsuit all persons who suffered physical injury precludes them from asserting claims on behalf of such individuals.

pursue an implied warranty claim, as none has alleged that the Serum did not do what it was supposed to do, *i.e.*, that it did not tame frizzy hair or add shine.

In *American Suzuki*, the plaintiffs purchased vehicles, used the vehicles without incident, and then attempted to bring claims for breach of implied warranty based on alleged defects that never manifested. The court did not allow the claims to proceed. *Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at 1296. Hence, the rule established under both New York and California law is that even a product that undisputedly contains a latent defect does not give rise to a breach of warranty claim, where the latent defect does not manifest itself causing an actual injury to the consumer. *See Andrade v. Pangborn Corp.*, No. 02-3771, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) (to assert an implied warranty claim, a plaintiff must also show that she was harmed, and that the failure of the product to have the expected quality was a substantial factor in causing that harm); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982) (rejecting implied warranty claim by purchaser of tires that had not manifested defect).

Given that Plaintiffs have not alleged that the Serum did not perform as intended, their conclusory allegations that the Serum is "defective and unsafe" and "not fit for the ordinary purpose for which it is used" (FAC, ¶¶ 87, 109) are insufficient to state a claim for breach of implied warranty.

## VIII.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

The UCL provides that: "unfair competition . . . include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The statute is "disjunctive," and, as a result, the statute is violated where a defendant's act or practice is unlawful, unfair, fraudulent or in violation of the FAL. *See Prata v. Super. Ct. (Bank One, NA)*, 91 Cal. App. 4th 1128, 1137 (2001). In their

FAC, Plaintiffs rely on an antiquated standard, alleging that L'Oréal's actions are "immoral, unethical, unscrupulous and offend established public policy . . . ." (FAC, ¶ 137.)  This language, articulated in *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 531 (1984), was rejected by the California Supreme Court in *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184-185 (1999) as "too amorphous and [as] provid[ing] too little guidance to courts and businesses."  In *Cel-Tech*, the Court acknowledged that, "[a]lthough the unfair competition law's scope is sweeping, it is not unlimited.  Courts may not simply impose their own notions of the day as to what is fair or unfair."  *Id.* at 182.  The following year, in *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000), the California Supreme Court made clear that the UCL "is not an all-purpose substitute for a tort or contract action."  Similarly, in *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719-20 (2001), the court stated that the concept of what constitutes an "unfair business practice" is limited.  As the court noted in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147 (2003), the Legislature "did not intend . . . to provide courts with *unlimited* equitable powers[]" under the UCL (emphasis added).

A.   **Plaintiffs Cannot Allege Unfair Conduct Under the UCL**

Plaintiffs' allegation that L'Oréal fails to adequately warn of the risk of flammability with respect to the Serum is insufficient to state a claim under the "unfair" prong of the UCL.  Contrary to the allegations in the FAC, courts may not simply impose their own notions as to what is fair or unfair.  *See Smith*, 93 Cal. App. 4th at 719-20.  As with claims brought under Section 349, the universal test to determine what conduct will constitute unfair competition in California is whether the public is likely to be deceived.  *People v. Toomey*, 157 Cal. App. 3d 1, 16 (1984); *People v. Dollar Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 131 (1989) (the UCL

protects against the likelihood of deception to the public).  In determining whether a particular

business practice is unfair, a court should also "balanc[e] the utility of the defendant's conduct

against the gravity of the alleged victim's harm." *Shvarts v. Budget Group, Inc.*, 81 Cal. App.

4th 1153, 1158 (2000); *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 184.  A court can determine

whether the public is likely to be deceived as a matter of law.  *Shvarts*, 81 Cal. App. 4th at 1158;

*Olson v. Cohen*, 106 Cal. App. 4th 1209, 1214-15 (2003) (holding that the resolution of 17200

issues as a matter of law at the pleading stage is appropriate); *Swanson v. St. John's Regional*

*Med. Ctr.*, 97 Cal. App. 4th 245, 246-47 (2002) (same).

      The decision in *Lavie v. Procter and Gamble Co.*, 105 Cal. App. 4th 496 (2003), is

instructive.  *Lavie* involved a UCL claim brought by a consumer who developed an ulcer

allegedly in connection with his ingestion of an over-the-counter pain product.  The consumer

brought a class action against the companies that developed, manufactured, and marketed the

product, claiming that the defendants' marketing campaign for the pain product was misleading.

*Id.* at 500.  In finding that a reasonable consumer would not be deceived by the marketing

campaign, the *Lavie* court held that:

> [T]he standard to be applied in assessing whether the conduct or advertisement
> violates the UCL is whether it is "likely to deceive" the consumer.  "Likely to
> deceive" implies more than a mere possibility that the advertisement might
> conceivably be misunderstood by some few consumers viewing it in an
> unreasonable manner.  Rather, the phrase indicates that the ad is such that it is
> probable that a significant portion of the general consuming public or of targeted
> consumers, acting reasonably in the circumstances, could be misled.

*Id.* at 508 (citations omitted).

      Plaintiffs' claims are no different than the claim presented in *Lavie*.  Plaintiffs allege that

L'Oréal has engaged in unfair business practices by failing to warn consumers that the Serum

"was defective, unsafe to use with styling appliances, highly flammable, and posed a serious risk

of physical injury to the neck, head and face." (FAC, ¶ 32.)  However, Plaintiffs have not

alleged that they viewed or read the Serum's packaging, or were exposed to any advertisements related to the Serum.  While Plaintiffs conclude that they "paid a premium for Serum because they reasonably believed that it was a safe product suitable for use in conjunction with styling appliances" (FAC, ¶ 40), Plaintiffs do not allege why it is that L'Oréal's representations or omissions would have allowed a "reasonable consumer" to conclude the same.  Thus, the notion that Plaintiffs believed they were paying a premium for the Serum due to its purportedly non-flammable characteristics is completely unsupported by the allegations of the FAC, and thus are nothing more than conclusory statements the Court is not bound to accept as true.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss") (second alteration in original).  Plaintiffs' UCL claim based on the unfair prong fails as a matter of law.

**B.**   **Plaintiffs Cannot Allege Any Unlawful Conduct to Support a UCL Claim**

An unlawful practice or act sufficient to support a UCL claim is "anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d 626, 634 (1979) (quoting *Barquis v. Merchs. Collection Ass'n of Oakland*, 7 Cal. 3d 94, 112-13 (1972)).  The UCL, thus, "borrows" violations from other laws and treats them as unlawful practices that are independently actionable under the statute. *Farmers Ins. Exch. v. Super. Ct. (The People)*, 2 Cal. 4th 377, 383 (1992).  Courts routinely dismiss UCL claims where the party has failed to establish a predicate violation of the underlying law. *See, e.g., Indep. Cellular Tel., Inc. v. Daniels & Assocs.*, 863 F. Supp. 1109, 1118 (N.D. Cal. 1994) (dismissal of UCL claim warranted based on court's finding that defendants were not subject to the licensing requirement that was the gravamen of the complaint).  Indeed, the UCL "cannot be

used to state a cause of action the gist of which is absolutely barred under some other principle of law." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 566 (1998).

In *Stop Youth Addiction*, the California Supreme Court was faced with the question of whether a UCL claim could be based on the "borrowing" of a Penal Code violation. On the one hand, violations of criminal laws can be redressed only by elected law enforcement officials. On the other hand, UCL claims founded on the "unlawful" prong may be based on a violation of another law. The *Stop Youth Addiction* court concluded that nothing in the particular statute at issue indicated an express legislative intent to preclude private enforcement through the UCL. However, in reaching that holding, the court approved several earlier cases that held that the UCL could not be used to circumvent other substantive rules of law, including those that prohibit private third parties from maintaining a particular action. *Id.* at 566. Following *Stop Youth Addiction*, the California Supreme Court addressed the contours of the "absolute barrier" defense to UCL claims. In *Cel-Tech Communications, Inc.*, 20 Cal. 4th at 180, the court stated:

> Courts may not simply impose their own notions of the day as to what is fair or unfair . . . . [A] plaintiff may [not] "plead around" absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute. A bar against an action may not be circumvented by recasting the action as one under [the UCL].

*Id.* at 182 (citations omitted).

In asserting a claim under the UCL's unlawful prong, Plaintiffs rely almost exclusively on alleged violations of "various federal Food, Drug and Cosmetic Act ["FDCA"] regulations, including, *inter alia*, 21 CFR 740.1, which provides that cosmetics that may be hazardous to consumers . . . must bear appropriate label warnings." (FAC, ¶ 126.)[4] However, Plaintiffs cannot maintain a UCL claim based on an alleged violation of the FDCA because there is no

---

[4] Plaintiffs also allege that violations of California's False Advertising Law and Consumer Legal Remedies Act constitute unlawful acts; however, as discussed below, Plaintiffs have not successfully stated claims under those statutes either.

private right of action under the FDCA. The FDCA provides in relevant part: "(a) Except as provided in subsection (b) of this section, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). Courts "have generally interpreted this provision to mean that no private right of action exists to redress alleged violations of the FDCA." *Summit Tech.*, 922 F. Supp. at 305. Accordingly, "a Plaintiff may not bring a § 17200 claim that is, in fact, an attempt to state a claim under the federal FDCA." *Summit Tech, Inc. v. High-Line Med. Instruments Co.*, 933 F. Supp. 918, 943 n.21 (C.D. Cal. 1996). *See also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) ("no . . . private right of action exists" under the FDCA). As the Central District of California noted in *Summit Technology*, "to the extent that the 'unfair' conduct constitutes violations of the California Food, Drug, and Cosmetic Act or Cal. Bus. & Prof. Code § 2234, the unfair competition claim must be dismissed as an attempt to assert a private right of action where none exists." *Summit Tech.*, 922 F. Supp. at 316.

C.       **Plaintiffs Cannot State a Claim Under the Fraudulent Prong of the UCL**

To maintain a claim under the fraudulent prong of the UCL, Plaintiffs must allege that they relied on misrepresentations or omissions that are likely to deceive members of the public. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 326 (2009). Plaintiffs also must show that reasonable consumers "had an expectation or an assumption about" the functionality of the product at issue. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (citing *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006)). Where the alleged misrepresentations or omissions were not likely to deceive a reasonable consumer, no action lies under the fraud prong of the UCL. *See Daugherty*, 144 Cal. App. 4th at 838 (rejecting plaintiffs' argument that Honda's failure to disclose a defect in the engine at the time of sale and

failure to give proper notice of the potential for oil leaks were "likely to deceive those customers into believing that no such defect exists"); *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) (upholding the dismissal of claims brought under California's consumer protection statutes where plaintiff could not show that sweepstakes notification was likely to deceive a reasonable consumer).

Plaintiffs allege that L'Oréal's conduct "had a tendency and likelihood to deceive persons to whom such conduct was and is targeted by designing, manufacturing, licensing, marketing and distributing Serum as a safe and quality 'leave-in' hair [sic] when in fact Serum was not suitable for ordinary uses and posed a serious risk of bodily harm, especially when used with heated styling appliances." (FAC, ¶ 139.) This allegation is far from sufficient to state a claim under the fraudulent prong of the UCL, as it merely concludes that the public would likely be deceived, without pleading any facts showing the basis for that conclusion. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss") (second alteration in original).

Indeed, Plaintiffs do not allege that they or the putative classes read or considered any of the alleged advertisements prior to purchasing the Serum. Rather, Plaintiffs simply allege that they seek to certify a class of persons who purchased the Serum sometime between February 2007 and the present, (FAC, ¶ 46), that Plaintiffs Altamura purchased the Serum "at a retail store in California several times during the period of February 4, 2007 through the present," (FAC, ¶ 3), and that Plaintiff Pearly purchased the Serum "at a pharmacy in New York" on or about March 2010. (FAC, ¶ 4.) As Plaintiffs do not identify with specificity

any statement or omission by L'Oréal that is "likely to deceive" the public, they cannot state a claim under the unfair or fraudulent prongs of the UCL.

## IX.   PLAINTIFFS CANNOT PLEAD A VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

To state a cognizable claim under the FAL, Plaintiffs must establish that L'Oréal made "untrue or misleading" statements while selling goods or services.  Like the "fraudulent" prong of the UCL, the FAL is governed by the "capacity to deceive" test; and Plaintiffs must allege that, because of a defendant's untrue or misleading statements, "members of the public are likely to be deceived." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983) (quoting *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976)).  *See also Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981, 986 (9th Cir. 2005) (explaining that the test for showing a "deceptive" practice under the UCL and "deceptive" advertising under the FAL are the same).

Plaintiffs cannot establish a violation of the FAL because they have not, and cannot, allege that L'Oréal made statements regarding the Serum that were untrue or misleading and that were likely to deceive the ordinary public. *Comm. on Children's Television, Inc.*, 35 Cal. 3d at 211. Again, Plaintiffs must show that the advertisements for the Serum are misleading to the general public, not to the least sophisticated consumer. *Lavie*, 105 Cal. App. 4th at 513.  It is well-settled that "the primary evidence in a false advertising case is the advertising itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003).  No specific advertisement is identified by Plaintiffs, thus Plaintiffs have failed miserably to plead that a reasonable consumer would believe anything about the flammability content of the Serum based on L'Oréal's marketing of that product.  Accordingly, there is no basis for the Court to conclude that L'Oréal made untrue or misleading statements that were likely to deceive the public.  Plaintiffs' FAL claim should be dismissed.

X.   **PLAINTIFFS CANNOT STATE A CLAIM UNDER THE CONSUMER LEGAL REMEDIES ACT**

The purpose of the CLRA is to attempt to "alleviate social and economic problems stemming from deceptive business practices . . . ." *Am. Online, Inc. v. Super. Ct. (Mendoza)*, 90 Cal. App. 4th 1, 15 (2001). The CLRA does this by prohibiting "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a). "[P]laintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm." *Mass. Mut. Life Ins. Co. v. Super. Ct. (Karges)*, 97 Cal. App. 4th 1282, 1292 (2002). Courts have the power to decide, at the earliest stages of the litigation, that a CLRA claim fails to state a cause of action as a matter of law. *See Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 660, 668-69 (2003) (affirming demurrer with respect to CLRA claim); *Shvarts*, 81 Cal. App. 4th at 1160 (same).

The CLRA prohibits 23 enumerated acts. Cal. Civ. Code §1770(a). Plaintiffs allege that L'Oréal violated four such prohibitions, namely: (1) representing that the Serum had characteristics it did not have; (2) representing the Serum was of a particular standard or quality when it was not; (3) advertising the Serum with the intent not to sell it as advertised; and (4) representing that the Serum had been supplied in accordance with previous representations when it had not. (FAC, ¶ 152 (citing Cal. Civ. Code § 1770(a)(5), (7), (9), (16)). To maintain a CLRA claim under these sections, Plaintiffs must identify a specific misrepresentation by the L'Oréal that its product had a characteristic or quality that it does not have. *Daugherty*, 144 Cal. App. 4th at 838.

Plaintiffs cannot meet this requirement as they have not identified any acts purportedly committed by L'Oréal to justify their claim, and instead simply quote from the statute. (*See*

FAC, ¶ 152.)  Furthermore, given that Plaintiffs' claim is based on a failure to warn and not on an affirmative misrepresentation, Plaintiffs cannot possibly allege facts showing representations actually made by L'Oréal.  *See Oestreicher v. Alienware Corp.*, 322 F. App'x 489 (9th Cir. 2009) (affirming dismissal of CLRA claim where Plaintiffs failed to allege defendant had "affirmatively misrepresented its products").

Plaintiffs also cannot satisfy the standing requirements of the CLRA, which provide remedies only to consumers who have suffered damage as a result of a violation.  Cal. Civ. Code § 1780(a); *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof."); *Mass. Mutual Life Ins. Co. v. Super. Ct. (Karges)*, 97 Cal. App. 4th 1282, 1292 (2002).  For all the reasons set forth above, Plaintiffs fail to set forth a cognizable "damage" or "injury" to support any of the causes of action alleged in this case, including the CLRA.

## XI.  CONCLUSION

Based upon all of the foregoing, L'Oréal respectfully requests that the Court grant this motion to dismiss, without leave to amend.


Dated:  April 15, 2011          PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                DENNIS S. ELLIS
                                KATHERINE F. MURRAY
                                NICHOLAS BEGAKIS
                                CYNTHIA CURTIN


                                By: _____/s/_____
                                              Cynthia Curtin
                                Attorneys for Defendants
                                L'Oréal USA, Inc. and L'Oréal USA Products, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2011 copies of the following were filed electronically and served by mail on anyone unable to accept electronic filing: Notice of Motion and Memorandum of Law in Support of Motion to Dismiss.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated:  April 15, 2011

By:       /s/ Cynthia Curtin
Dennis S. Ellis
Katherine F. Murray
Nicholas Begakis
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Cynthia Curtin
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY  10022
Telephone:  212-318-6000
Facsimile:  212-752-2515

Attorneys for Defendants
L'Oréal USA, Inc. and L'Oréal USA Products, Inc.

LEGAL_US_W # 67762516.1