UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE ALTAMURA; and LISA PEARLY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>L'ORÉAL USA, INC., a Delaware Corporation; and L'ORÉAL USA PRODUCTS, INC., a Delaware Corporation,<br><br>Defendants. | Civil Action No. 11 Civ. 0799 (SAS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE**

Dennis S. Ellis
Katherine F. Murray
Nicholas Begakis
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Cynthia Curtin
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: 212-318-6000
Facsimile: 212-752-2515

Attorneys for Defendants
L'Oréal USA, Inc. and
L'Oréal USA Products, Inc.

## TABLE OF CONTENTS

                                                                                                                                **Page**

I. PRELIMINARY STATEMENT ................................................................................ 1

II. RELEVANT ALLEGATIONS AND NOTABLE OMISSIONS OF THE FAC .............. 2

III. STANDARD FOR A RULE 12(f) MOTION TO STRIKE ............................................. 3

IV. CLASS TREATMENT IS INAPPROPRIATE AS A MATTER OF LAW
BECAUSE PLAINTIFFS CANNOT PLEAD THE PREREQUISITES FOR
CLASS TREATMENT ................................................................................................ 4

    A. The Class Can Never Be Certified Because It Contains Members Who
Lack Standing ................................................................................................... 4

    B. Individual Issues Predominate Because Each Class Member Will Have to
Show Reliance .................................................................................................. 7

    C. Plaintiffs' Attempt to Convert a Faulty Products Liability Claim Into a
Consumer Class Action Should Be Disallowed .............................................. 9

V. CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ..........................................................................4, 6

*Burdick v. Union Security Ins. Co.*,
   No. CV07-4028, 2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) ..............................5

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ....................................................................................7

*Cohen v. DIRECTV, Inc.*,
   178 Cal. App. 4th 966 (2009) .................................................................................8

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ..................................................................................7

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..........................................................................1, 4, 5

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ........................................3

*Gonzalez v. Proctor & Gamble Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ............................................................................9

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70, 78 (2d Cir. 2004) ...............................................................................7

*Hooper v. HM Mane Solutions, LLC*,
   819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006) .......................................................1, 10, 11

*In re Copper Antitrust Litig.*,
   196 F.R.D. 348 (W.D. Wis. 2000) .........................................................................5

*In re Initial Pub. Offering Secs. Litig.*,
   No. 21 MC 92 (SAS), 2008 U.S. Dist. LEXIS 38768 (S.D.N.Y. May 13, 2008) ....3

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ........................................................................................6, 7

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ..........................................................................1, 10, 11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Jones v. CBE Group, Inc.*,
  215 F.R.D. 558, 570 (D. Minn. 2003) ............................................................................. 7

*Leyse v. Corporate Collection Servs., Inc.*,
  No. 03 Civ. 8491, 2006 WL 2708451 (S.D.N.Y. Sep. 18, 2006) ..................................... 6

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ........................................................................................... 4

*Naftulin v. Sprint Corp.*,
  847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007) ......................................................................... 9

*Pfizer, Inc. v. Super. Ct. (Galfano)*,
  182 Cal. App. 4th 622 (2010) ..................................................................................... 8, 9

*Princess Cruise Lines, Ltd. v. Super. Ct. (Wang)*,
  179 Cal. App. 4th 36 (2009) ....................................................................................... 7, 8

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................... passim

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) ....................................................................................... 2, 3

*Simer v. Rios*,
  661 F.2d 655 (7th Cir. 1981) .......................................................................................... 7

*Solomon v. Bell Atl. Corp.*,
  777 N.Y.S.2d 50 (N.Y. App. Div. 2004) ........................................................................ 9

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 6

**RULES**

Fed. R. Civ. P. 12(f) ............................................................................................................... 3

Fed. R. Civ. P. 23(a) ............................................................................................................... 4

**TREATISES**

5 Jerold S. Solovy et al., Moore's Federal Practice (3d ed. 2011) ....................................... 3

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III, § 2 .................................................................................................... passim

I. **PRELIMINARY STATEMENT**

This Court should strike the class allegations included in the First Amended Complaint ("FAC") filed by Plaintiffs Catherine Altamura and Lisa Pearly ("Plaintiffs") because Plaintiffs have not adequately pled the requirements to maintain this case as a class action. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (striking class allegations at the pleading stage). Allowing this action to proceed past the pleading stage as a class action will result in an enormous burden on the parties and this Court, only to eventually lead to the same result – Plaintiffs will not establish the required elements of commonality and typicality required for class treatment. As a threshold matter, Plaintiffs' classes, as defined, include putative members without the standing required by Article III Section 2 of the United States Constitution ("Article III"), and thus class treatment is precluded. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing").

Moreover, Plaintiffs' claims include elements of reliance and causation which require individual determinations that make class treatment inappropriate. *Sanders*, 672 F. Supp. 2d at 990-91 (striking of class allegations appropriate where individual determinations regarding reliance predominate). Finally, Plaintiffs' transparent attempt to bring a nationwide products liability class action under the guise of the consumer protection laws of New York and California should not be allowed. The individual nature of the inquiry regarding a failure to warn case is ill-suited for determination on a class-wide basis. *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) (declining to certify a class of plaintiffs claiming that Vioxx was more dangerous than cheaper alternatives); *see also Hooper v. HM Mane Solutions, LLC*, 819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006) (holding, on virtually identical facts, that a class of

consumers that purchased a hair product that caused scalp and hair damage to some consumers was not amenable to class certification because individual questions would predominate).

The Court should strike the class allegations from the FAC in order to prevent prejudice to L'Oréal U.S.A., Inc. and L'Oréal USA Products, Inc. (collectively, "L'Oréal") and irredeemably futile litigation, which would waste the resources of the Court and the parties. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues . . .").

## II. RELEVANT ALLEGATIONS AND NOTABLE OMISSIONS OF THE FAC

As set forth in greater detail in L'Oréal's Motion to Dismiss,[1] Plaintiffs' claims are based on allegations that L'Oréal failed to warn consumers that Garnier Fructis Sleek & Shine Anti-Frizz Serum (the "Serum") contained two chemicals that, when used in connection with heat producing hair styling products, could be flammable. (FAC, ¶ 2.) Plaintiffs base their claims on several different "consumer targeted statements" regarding the Serum (FAC, ¶¶ 16-17), but fail to allege which (if any) of these statements they (and the various classes they seek to represent) read, considered or relied upon prior to purchasing the Serum. Plaintiffs also do not allege that they or members of the putative classes ever used the Serum. Likewise, Plaintiffs do not allege that the Serum caused them physical harm.

Plaintiffs purport to represent three classes of consumers comprised of (1) all individuals who purchased the Serum in the United States during the period of February 4, 2007 through the present (the "Multistate Class"); (2) all individuals who purchased the Serum in California during the period of February 4, 2007 through the present (the "California Class); and (3) all

---

[1] L'Oréal's Motion to Dismiss includes a full recitation of the facts as alleged in Plaintiffs' FAC. In the interest of brevity, those facts are not recited here. Instead, only the facts relevant to this motion to strike are included.

individuals who purchased the Serum in New York during the period of February 4, 2008 through the present. (FAC, ¶ 46.) Excluded from the class definitions are L'Oreal, its affiliates and their employees, and anyone that may have sustained physical injury as a result of their use of the Serum. (FAC, ¶ 47.)

### III. STANDARD FOR A RULE 12(f) MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that the Court may strike certain allegations, words or phrases from a pleading. Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the [putative class members] are fairly encompassed within the named plaintiff's claim . . . ." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982). As a result, a court may properly strike class allegations on a pre-answer motion to strike where a complaint demonstrates that a class action cannot be maintained on the facts alleged. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009).

Courts in the Southern District of New York have held that a motion to strike class allegations may be addressed "prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *In re Initial Pub. Offering Secs. Litig.*, No. 21 MC 92 (SAS), 2008 U.S. Dist. LEXIS 38768, at *7-8 (S.D.N.Y. May 13, 2008); 5 Jerold S. Solovy, et al., Moore's Federal Practice § 23.145 (3d ed. 2011) ("A court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims").

## IV. CLASS TREATMENT IS INAPPROPRIATE AS A MATTER OF LAW BECAUSE PLAINTIFFS CANNOT PLEAD THE PREREQUISITES FOR CLASS TREATMENT

As an initial matter, Plaintiffs seek to certify a class which includes members that do not have standing to assert claims; Plaintiffs' class allegations are fatally flawed as a result. *Denney*, 443 F.3d at 264 ("no class may be certified that contains members lacking Article III standing."); *see also Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1033 (8th Cir. 2010) (noting that California jurisprudence purporting to eliminate standing requirements for putative class members is of no moment in a federal proceeding).

Additionally, Plaintiffs' class allegations should be stricken because Plaintiffs have not pled, and cannot plead, the prerequisites required to certify a class action. In order to justify class treatment, an action must satisfy four prerequisites: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a). The burden is on the party seeking to maintain the lawsuit as a class action to establish each of these prerequisites by a preponderance of the evidence. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). If it is clear from the face of the complaint that plaintiff cannot meet this burden, it is appropriate to strike the class allegations at the pleading stage. *Sanders*, 672 F. Supp. 2d at 990-91.

### A. The Class Can Never Be Certified Because It Contains Members Who Lack Standing.

Plaintiffs' classes, as defined, can never be certified because each of the proposed classes necessarily includes putative members that lack standing as a matter of law. Any purported class

that includes putative members who do not have Article III standing is inappropriate and should be stricken at the pleading stage. *Sanders*, 672 F. Supp. 2d at 990-91 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). The existence of a case or controversy within the meaning of Article III is a threshold question in every matter before a federal court. *Denney*, 443 F.3d at 263. "The filing of suit as a class action does not relax this jurisdictional requirement." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). By extension "no class may be certified that contains members lacking Article III standing." *Id.* at 264.

Plaintiffs, at least with respect to the California Class, likely seek to rely on certain California authority to lessen their burden to satisfy the standing requirement. They should not be permitted to do so. The California Supreme Court's decision in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), made clear that plaintiffs asserting claims under California's Unfair Competition Law must suffer an "injury in fact" in order to state a claim, yet declined to impose a rigorous pleading standard relating to the putative plaintiffs' reliance and injury. Federal law, however, is directly to the contrary. *See, e.g., Sanders*, 672 F. Supp. 2d 990-91; *Denney*, 443 F.3d at 264 ("no class may be certified that contains members [that] lack[] . . . standing"); *Burdick v. Union Security Ins. Co.*, No. CV07-4028, WL 4798873, at *4 (C.D. Cal. Dec. 9, 2009) ("absent class members lacking justiciable claims under Article III should be excised from the case"); *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 353 (W.D. Wis. 2000) ("[i]mplicit in Rule 23 is the requirement that the plaintiffs and the class they seek to represent have standing").

The facts and reasoning in *Sanders* are analogous here. In that case, the plaintiff filed a complaint alleging that Apple had engaged in false advertising for a computer that it was marketing. 672 F. Supp. 2d at 990-91. The court in *Sanders* struck Plaintiff's class allegations at the pleading stage because the class included members who lacked standing, noting that the

class definition "necessarily includes individuals who . . . either did not see or were not deceived by advertisements, and individuals who suffered no damages. Such individuals would lack standing to bring these claims." *Id.* at 991.

Plaintiffs have defined the putative class to include everyone who has purchased the Serum in the last three to four years, **who has not suffered personal injury**. (FAC, ¶¶ 46-47.) Just like in *Sanders*, Plaintiffs' class definition includes purchasers of the Serum who were not affected by the alleged misleading statements and omissions identified in the FAC such as plaintiffs who either failed to consider the statements or omissions or were happy with the Serum regardless of any such misstatements or omissions. These putative plaintiffs suffered no injury and therefore lack standing under Article III. Plaintiffs' are likely to argue that putative plaintiffs are not required to satisfy the standing requirements in a case brought under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.) (the "UCL") as a result of the California Supreme Court's opinion in *In re Tobacco II Cases (Tobacco II)*, 46 Cal. 4th 298 (2009); however that is not the case. Regardless of the effect of *Tobacco II* on cases pending in state courts in California, the opinion is inapplicable in federal court because that court's "expression of the UCL's standing requirement diverged from federal jurisprudential principles . . . ." *Avritt*, 615 F.3d at 1034 (citing *Tobacco II*, 46 Cal. 4th at 331 (Baxter, J. dissenting)). Plaintiffs' class definitions necessarily include members that lack standing under Article III, a defect which cannot be rescued by any UCL jurisprudence.

Moreover, even assuming *arguendo* that Plaintiffs were able to establish some sort of *de minimis* economic injury, such an injury would not merit class treatment. *See Leyse v. Corporate Collection Servs., Inc.*, No. 03 Civ. 8491, 2006 WL 2708451, at *9 n. 5 (S.D.N.Y. Sep. 18, 2006) (noting that class treatment is not superior if plaintiffs recovery (potentially 51 cents) would be

minimal); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 570 (D. Minn. 2003) (class treatment not superior when "potential recovery for unnamed class members is, at most, *de minimis*"). Plaintiffs' class allegations include putative members that have suffered no injury and should be stricken as a result.

### B. Individual Issues Predominate Because Each Class Member Will Have to Show Reliance.

The majority of Plaintiffs' claims require a showing of reliance; the individual nature of a determination regarding reliance precludes class treatment. In order to certify a class, each class member must have relied on the misrepresentation (or in this case the alleged omission). Reliance raises state of mind and credibility issues, and courts require that these issues be considered separately and with regard to each individual claimant, precluding class treatment. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724-30 (5th Cir. 2007) (holding that class treatment is inappropriate for warranty claims because reliance is required); *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 78 (2d Cir. 2004) (holding that individual issues predominate where reliance is an issue); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) (class action cannot be certified where reliance will be an issue); *Simer v. Rios*, 661 F.2d 655, 673-674 (7th Cir. 1981) (same). When it is clear from the face of the pleading that a plaintiff will be unable to establish reliance on a class-wide basis, it is appropriate to strike the class allegations at the pleading stage. *Sanders*, 672 F. Supp. 2d at 990-91 (striking class allegations because individual showing of reliance was required and therefore individual issues predominated).

With regard to the California Class, Plaintiffs may again rely on *Tobacco II* and allege that it eliminated the reliance requirement under the UCL; however, subsequent authority indicates that is not the case. In *Princess Cruise Lines, Ltd. v. Super. Ct. (Wang)*, 179 Cal. App. 4th 36, 42 (2009), the court held that despite the holding in *Tobacco II*, a "Plaintiff in a UCL

action based on a fraud theory involving false advertising and misrepresentation must show reliance[.]" In *Princess Cruise Lines*, the plaintiffs purchased shore excursion packages and alleged that the cruise line misrepresented the nature of its involvement in the shore excursions and added improper surcharges. The court held that class treatment was inappropriate because the plaintiffs could not establish reliance in that they likely would have purchased the shore excursions regardless of the surcharge. *Id.* at 44.

In the case of a claim based on numerous representations, reliance is not uniform across a putative class and class treatment is therefore inappropriate. The California Court of Appeal's recent decision in *Pfizer, Inc. v. Super. Ct. (Galfano)*, 182 Cal. App. 4th 622 (2010) is instructive. The plaintiff in that case brought a class action under the UCL on behalf of "all purchasers of Listerine in California" during a certain period alleging that Pfizer's claim that Listerine was more effective than flossing was misleading. *Id.* at 631. The court noted that recovery in a UCL action is limited to restitutionary disgorgement and went on to hold that the class as defined was "grossly overbroad" because "one who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution." *Id.* The court noted that "perhaps the majority of class members who purchased Listerine during the pertinent six-month period did so not because of any exposure to Pfizer's allegedly deceptive conduct, but rather, because they were brand-loyal customers or for other reasons." *Id.* at 632. As a result, the court reversed the trial court's ruling certifying the class because individual issues necessarily predominated regarding what advertisements the putative plaintiffs saw and considered. *Id.*; *see also Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009) (court overturned class certification UCL claims based on the contention that DIRECTV's advertisements regarding its high definition services

because the class definition included who did not see and/or did not rely on the advertisements at issue).

This case presents issues similar to those considered in *Pfizer*. The FAC purports to rely on omissions from the Serum's packaging and statements made on websites, which Plaintiffs do not even allege they saw. There is no allegation in the FAC, nor could there be, indicating that the entire putative class shares Plaintiffs' subjective understanding of this information, or even that they viewed the exact same materials as Plaintiffs. The lack of uniform reliance makes class treatment of such issues inappropriate, and the class allegations should be stricken at this time. *Sanders*, 672 F. Supp. 2d at 990-91 (striking class allegations because individual showing of reliance was required and therefore individual issues were predominate); *Naftulin v. Sprint Corp.*, 847 N.Y.S.2d 903 (N.Y. Sup. Ct. 2007) ("[T]he inducement to purchase defendants' services [or products] cannot be inferred and is unique to each class member."); *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 56 (N.Y. App. Div. 2004) ("Even assuming that all the members of the class saw the same advertisements, questions as to whether each individual was reasonably misled by them predominate, given the alternative sources of information about [Defendant's product] that each may have had"). *See also Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624-25 (S.D. Cal. 2007) (denying class certification because "allegations that a class of consumers, who may have seen all, some, or none of the advertisements that form the basis of [p]laintiff's suit, does not allow an inference of common reliance or liability").

### C. Plaintiffs' Attempt to Convert a Faulty Products Liability Claim Into a Consumer Class Action Should Be Disallowed.

Finally, the Court should recognize the FAC for what it is, an attempt to bring a nationwide products liability class action on behalf of consumers who have not even been injured. The individual determinations required to resolve a failure to warn products liability

case make such cases inherently inappropriate for class treatment. *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009); *Hooper v. HM Mane Solutions, LLC*, 819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006).

*In re Vioxx*, another case in which the plaintiffs asserted UCL claims based upon a failure to warn, is instructive here. In that case, the plaintiffs alleged that they purchased Vioxx as a result of misrepresentations in advertising and public statements made by Merck & Co., Inc. (180 Cal. App. 4th at 123.) The plaintiffs claimed that Vioxx was no more effective than the generic alternative and that it was not as safe as the generic alternative. *Id.* The plaintiffs sought to certify a class under California's consumer protection statutes arguing that they paid more for Vioxx than what it was worth and that the common injury sustained by each class member that purchased Vioxx was sufficient for class treatment. *Id.* Both the trial court and the appellate court rejected this argument, holding that individual inquiries regarding the value of the product to each putative class member, as well as the nature of each plaintiff's decision to proceed with the use of the product despite the associated risks, would predominate, making class treatment inappropriate. *Id.* at 133. The California Court of Appeal upheld the trial court's reasoning "that the monetary value plaintiffs wish to assign to their claim—the difference in price between Vioxx and a generic . . . implicates a patient-specific inquiry and therefore fails the community of interest test." *Id.* at 135. The court determined that any such inquiry would be inappropriate on a class-wide basis because each patient purchased Vioxx for individualized reasons. *Id.*

Similarly, in *Hooper*, the plaintiffs brought a putative class action on behalf of all consumers that had purchased a hair product which allegedly caused some consumers damage to their hair and scalp. *Hooper*, 819 N.Y.S.2d at 848. The court held, first, that class treatment was inappropriate in a products liability action for personal injury; and second, that it was particularly

inappropriate given that certain putative plaintiffs had not been injured at all. *Id.* The court noted that the mere presence of the offending ingredient in the product was not sufficient to support class treatment given the wide variety of effects it may or may not have had on consumers. *Id.*

Plaintiffs contend that class treatment is appropriate in this case because each member of the proposed class purchased the Serum in reliance on the lack of representations regarding risks allegedly associated with the product. (FAC, ¶ 2.) Plaintiffs' premise would require the Court to determine the subjective value of the Serum as compared to the other brands containing a warning regarding flammability that each class member would have purchased. Just like *In re Vioxx*, the decision to purchase the Serum is made "in reliance on many different factors, which vary . . ." from consumer to consumer. *In re Vioxx*, 180 Cal. App. 4th at 133. Moreover, as in *Hooper*, Plaintiffs attempt to press what are essentially product liability claims as a class action despite a wide swath of "injuries" or lack thereof. In order for the Court to determine whether each class member suffered an injury, the Court will necessarily be required to consider a morass of individualized issues. As a result, class treatment is inappropriate and the class allegations of the FAC should be stricken at this time.

## V. **CONCLUSION**

For the foregoing reasons the Court should strike Plaintiff's class allegations without leave to amend.

Dated: April 15, 2011

PAUL, HASTINGS, JANOFSKY & WALKER LLP
DENNIS S. ELLIS
KATHERINE F. MURRAY
NICHOLAS BEGAKIS
CYNTHIA CURTIN

By: _____/s/_____
Cynthia Curtin
Attorneys for Defendants
L'Oréal USA, Inc. and L'Oréal USA Products, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2011 copies of the following were filed electronically and served by mail on anyone unable to accept electronic filing: Notice of Motion and Memorandum of Law in Support of Motion to Strike. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated:  April 15, 2011

By:    /s/ Cynthia Curtin
Dennis S. Ellis
Katherine F. Murray
Nicholas Begakis
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Cynthia Curtin
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY  10022
Telephone:  212-318-6000
Facsimile:  212-752-2515

Attorneys for Defendants
L'Oréal USA, Inc. and L'Oréal USA Products, Inc.

LEGAL_US_W # 67762724.1